IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, JR., as Trustee,<br><br>          Plaintiffs,<br><br>    v.<br><br>ROBERT BERGQUIST,<br><br>          Defendant. | Case No. 17 C 2054<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The relevant facts of this case are not in dispute. The Defendant, Robert V. Bergquist ("Bergquist"), was a former shareholder and president of Genesee-Bay Constructors, Inc. ("Genesee"). In 2005 he decided to retire and entered into a Stock Redemption Agreement with Genesee to sell his 50% ownership interest back to it. The terms included a purchase price of $750,000.00 plus a non-qualified retirement benefit and a life insurance policy. The next year his partner sold his 50% interest back to Genesee. About the same time Scott Senko ("Senko") purchased a one-half interest in the company and in the same year, Dawn Plantz ("Plantz"), Bergquist's daughter, purchased the other

half interest in Genesee.  In 2008, Senko sold all his stock back to the company, leaving Plantz as the sole owner of Genesee.

A payment schedule had been established for Genesee to pay Bergquist a set amount each month.  Genesee was able to make such payments from January 2006 through December 2008, when, apparently, Genesee fell on hard times.  It made no payments to Bergquist in 2009 and only sporadic payments in 2010 and 2011, and then no payments at all through 2014.  To keep Genesee afloat in addition to his forbearance, Bergquist agreed to subordinate his debt to Genesee's creditor bank as well as to guarantee Genesee's line of credit.  Bergquist also amended his Stock Redemption Agreement to remove the non-qualified retirement benefit as well as his life insurance policy.

In June 2011, Genesee effectuated a complete withdrawal from the Plaintiff Fund, thus incurring a withdrawal liability of $184,965.45.  On August 15, 2013, the Fund gave notice and made a demand on Genesee for payment of the withdrawal liability.  The notice required Genesee to make a lump sum payment of the withdrawal liability by September 1, 2013.  When it failed to do so, the Fund filed suit against Genesee on July 10, 2014.  On August 27, 2014, a default judgment was entered against Genesee in favor of the fund in the amount of $232,720.51.

On August 15, 2014, Genesee executed an Assignment of all its assets to Bergquist purportedly in satisfaction of the Stock Redemption Agreement. As a result of the transfer Bergquist received $168,376.52. After the transfer, Genesee was left without any assets and an inability to pay its only remaining creditor, the Plaintiff Fund. The Fund has now filed this suit against Bergquist seeking to recover the value of the assets transferred to him in August 2014. The suit alleges that this transfer was made to evade or avoid withdrawal liability in violation of Section 1392(c) of the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pensions Plan Amendments Act of 1980 29 U.S.C. § 1001 *et seq.* (the "MPPAA"), and in violation of the Michigan Uniform Fraudulent Transfer Act, Mich. Comp. Laws § 566.31 *et seq.* ("MUFTA"). The parties have now cross moved for summary judgment.

## II. **DISCUSSION**

### A. COUNT I

Under the MPPAA, an employer who withdraws from a multiemployer pension plan can be forced to pay the plan a sum approximating the vested but unfunded benefits of the employer's employees. The purpose is to protect the other employees in the multi-employer plan from having to pay for those benefits. The statute also provides another layer of protection by disregarding

any transaction done by the employer with a principal purpose of evading or avoiding withdrawal liability. 29 U.S.C. § 1392(c).

As stated earlier, the principal facts of the case are not in dispute. Genesee had a significant withdrawal liability to the Plaintiff Fund at the time it conveyed all its assets to Bergquist. Genesee also had a significant liability to Bergquist. While there is nothing in the law that gives a Fund any greater rights to an employer's funds than any other creditor, there is one major exception found in Section 1392(c), which in effect, gives a creditor of the employer fewer rights when competing with a fund for assets. An employer cannot evade or avoid a withdrawal liability by removing assets, if such transfer or removal is done to evade or avoid the withdrawal liability as "a principal purpose." *Santa Fe Pacific Corp. v. Central States, Southeast and Southwest Areas Pension Fund*, 22 F.3d 725, 727 (7th Cir. 1994). A purpose is "a state of mind inferred from the testimony and other evidence." *Id.*

While both parties cite *Santa Fe,* the procedural situation there is different from that presented in this case. In *Santa Fe*, the 7th Circuit was reviewing a district court's affirmance of an arbitrator's decision, where the arbitrator had the opportunity, like any trier of fact, to observe the witnesses. Here the Court is asked to render a decision based on a summary judgment record,

without the opportunity to observe the witnesses. Neither side comments on this distinction, so the Court will ignore it also. It is important because both sides give their views of the believability of the witnesses, which consist of the Defendant and his daughter.

The Plaintiff Fund's view is straightforward: Genesee has owed Bergquist a large sum of money for several years and he not only forbore attempting to collect but he provided additional financial assistance in attempting to keep the company afloat. It was not until the company was out of business and a defendant in a lawsuit brought by the Fund to collect the withdrawal liability owed since June 2011, that Genesee, owned one hundred percent by Bergquist's daughter, disposed of all its assets as partial repayment of its debt to Bergquist.

Bergquist counters by pointing out that the Fund had no greater claim on Genesee's assets than he did. However, when asked at deposition the reason for the asset transfer at the specific time it was made (after the suit was filed but before default judgment was entered), Bergquist's daughter, Genesee's owner, Plantz, testified:

> Q. So why was this assignment entered into in August of 2014?
> A. Pretty much because my dad said I'm done. I want what is owed to me. There is this.

> Q. So, Mr. Bergquist approached you and said that's it, no more. Or did you approach him and say we are going out of business?
> A. I honestly - I can't say. Things were pretty bleak, pretty stressful. It was must all – it was a bad time.

As stated in *Santa Fe*:

> The imposition of withdrawal liability in a sale of business situation requires only that a principal purpose of the sale be to escape withdrawal liability. It needn't be the only purpose; it need only have been one of the factors that weighed heavily in the seller's thinking.
> * * *
> The clear import of 'a principal' is to let the employer off the hook even if one of his purposes was to beat withdrawal liability, provided however that it was a minor, subordinate purpose, as distinct from a major purpose. To let the employer off even if avoiding such liability was a major purpose would ill serve the statute's goal of preventing one employer from unloading his pension obligations onto the other employers in a multiemployer plan.

Here there were two competing purposes involved in the transfer of all of Genesee's assets to Bergquist. The first is the not unreasonable desire of a daughter to provide some recompense to her father after the family business went kaput. The other was to unload the withdrawal liability. Bergquist had (presumably) spent money in helping his daughter keep the business going. He had sold his stock back to the company in return for some retirement income and an insurance policy. The company was unable to make the retirement income payments nor maintain the life insurance policy. So, Genesee did owe him the money he received. However,

on the other side of the ledger, Platz was aware of the withdrawal liability which at the time of the transfer to Bergquist was substantially higher than the value of the company. Genesee had been sued by the Fund. She was aware of the pending suit and, presumably, that the company was in default and in line for a substantial judgment to be levied against it. Once there was a judgment lien, it would not be possible for Genesee to pay Bergquist. There is no indication that Bergquist intended to sue Genesee for non-payment. There is also no indication that Bergquist was destitute at the time. Under these facts it is not possible to say that getting Genesee off the hook for the withdrawal liability was a minor consideration.

The Court therefore finds in favor of the Plaintiff Fund and against Bergquist. The Plaintiff's Motion for Summary Judgment is granted and the Motion for Summary Judgment by Bergquist is denied as to Count I, Section 1392(c).

### B. Count II

With respect to Count II, under Section 566.34 of MUFTA, an intent to defraud must be proved. The Court finds that there are questions of fact concerning the intent of Genesee when it transferred all its assets to Bergquist. The mere fact that a debtor prefers one debtor to the exclusion of another does not amount to fraud. There is no doubt that Bergquist was a creditor

of Genesee and his debt was legitimate. While Plaintiff Fund contends that there are numerous "badges of fraud," the only one clearly applicable is that Bergquist was the father of Platz, and thus was an insider. MCL 561.31(g). The Motion for Summary Judgment is denied with respect to Section 566.34.

However, the case is different with respect to the Plaintiff Fund's claim under MCL § 566.38(2). Under this Section a transfer is fraud if (1) the creditor's claim arose before the transfer—here the claim arose when Genesee withdrew from the fund, *i.e.,* June 25, 2011; (2) the transfer was to an insider—here to Bergquist, the father of Plantz, Genesee's sole owner; (3) the debt paid was antecedent—it arose as a result of stock redemption agreement; (4) the debtor was insolvent—the transfer included all of the assets of Genesee; and (5) the insider had reasonable cause to believe Genesee was insolvent. MCL § 566.38(2). Bergquist was the former owner and was aware that he received all the assets of Genesee and he knew that Genesee had withdrawn from the Fund and had a substantial withdrawal liability that could no longer be paid after the assets were transferred to him. In answer Bergquist cites § 566.38(6), which provides a defense to a § 566.35(2) claim where, as would be applicable here: if the transfer was made in the ordinary course of the business. However, a transfer of all a firm's assets can hardly be described as in the ordinary course

of the business. This provision is meant to include repetitive payments such as insurance premiums, payroll, etc. *In re DCT., Inc.*, 295 B.R. 236, 239 (Bank. E.D. Mich. 2003).

Accordingly, Summary Judgment is granted in favor of the Plaintiff Fund and against the Defendant on Count II. Defendant's Motion for summary judgment is denied.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is granted as to Count I and Count II. Defendant's Motion for Summary Judgment is denied as to Count I and Count II.

The Plaintiff Fund is to set forth its claim for damages and the Defendant may file its objections. The Court will then rule on the damages issues. Plaintiff is given one week to file its claim and Defendant has one week to respond.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 4/24/2019